DECISION AND JUDGMENT ENTRY
This is an appeal from a Pike County Common Pleas Court judgment of conviction and sentence. The jury found Jeffrey Montgomery, defendant below and appellant herein, guilty of negligent assault, in violation of R.C. 2903.14 (A), a third degree misdemeanor.
Appellant raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE VERDICT OF THE JURY AND THE JUDGMENT OF THE COURT FINDING THE DEFENDANT GUILTY OF NEGLIGENT ASSAULT IS AGAINST THE WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW"
SECOND ASSIGNMENT OF ERROR:
 "THE SENTENCE IMPOSED BY THE COURT WHERE IT ORDERS DEFENDANT TO PAY RESTITUTION TO THE VICTIM IS CONTRARY TO LAW."
Our review of the record reveals the following facts pertinent to the instant appeal. On April 27, 1998, appellant shot Keith Scaggs in the leg. On May 19, 1998, the Pike County Grand Jury returned an indictment charging appellant with two counts of felonious assault, in violation of R.C. 2903.11 (A) (1) and in violation of R.C. 2903.11 (A) ((2), respectively. The R.C.2903.11 (A) (1) count further contained a firearm specification.
On January 4, 1999 and continuing through January 7, 1999, the trial court held a jury trial. The evidence adduced at trial follows.
Scaggs testified that appellant had an affair with Scaggs' former wife. Scaggs stated that appellant relayed to Scaggs that appellant's sexual experience with Scaggs' former wife "wasn't any good." Scaggs not only took offense to appellant's derogatory statement, but also to appellant's admission that he had, in fact, slept with his former wife. Scaggs stated that he called appellant's home several times and the two discussed how each wanted to "whip [the other's] ass."
On April 27, 1998, appellant and Scaggs were conversing over the telephone about how each wanted to "whip [the other's] ass." Scaggs stated that appellant told Scaggs to "come on down" to his house. Scaggs testified that he accepted appellant's challenge subject to three conditions: "no guns, no knives, no sheriff."
Scaggs testified that when he arrived at appellant's house, he knocked on the door. As he knocked on the door, Scaggs saw appellant sitting in a chair, smoking a cigarette and smiling. Scaggs "invited" appellant outside by stating, "Get your ass out here." Appellant crudely indicated that he would not come outside. Scaggs and appellant then began shouting obscene language back and forth. Scaggs stated that after he repeated his offer to appellant to come outside, appellant stated, "You think you're crazy, you son-of-a-bitch, I'll show you crazy." Scaggs testified that appellant then started shooting his gun, a 9mm automatic Baretta handgun, at Scaggs, eventually hitting Scaggs in his lower left leg.
Sergeant Sanders testified that he took appellant's statement following the incident. The state played the audiotape of appellant's statement at trial.
In his statement, appellant stated that Scaggs had been calling him for about an hour, making threats. Appellant stated that Scaggs called and stated that he was going to come to appellant's home and shoot him. Appellant stated that when Scaggs arrived, Scaggs started beating on the door. Appellant told Scaggs to leave, and Scaggs became more aggressive. Appellant stated that he retrieved his gun from the bedroom, and then he let Scaggs know that he had a gun. Appellant again told Scaggs to leave, to which Scaggs replied that he was gonna "kick [appellant's] ass."
Appellant stated that Scaggs continued beating on his door. When appellant again told Scaggs to leave, Scaggs told appellant "No, mother fucker, you're just gonna have to shoot me." Thinking he had no other choice, appellant began shooting his gun, aiming toward the ground. One of the shots hit Scaggs. Appellant stated that he had not really meant to shoot Scaggs.
Appellant's testimony was relatively consistent with his statement that he gave to the officers shortly after the incident. Appellant claimed that he shot Scaggs in self-defense. He testified that Scaggs stated: "Shoot me, you son-of-a-bitch. You're gonna have to shoot me because I'm not leaving here until I tear your fuckin' head off."
At the close of the evidence, the trial court instructed the jury on the lesser included offense of negligent assault. On January 7, 1999, the jury found appellant guilty of negligent assault.
On February 2, 1999, the trial court sentenced appellant to sixty days in jail and ordered appellant to pay restitution to the victim. Appellant filed a timely notice of appeal.
 I
In his first assignment of error, appellant complains that the trial court's finding of guilty is against the manifest weight of the evidence, specifically, appellant contends that the weight of the evidence demonstrates that he acted in self-defense. We disagree with appellant.
When considering a claim that the trial court's judgment is against the manifest weight of the evidence, the reviewing court sits, essentially, as a "`thirteenth juror' and [may] disagree
with the fact finder's resolution of the conflicting testimony."State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 546-47 (quoting Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 2218, 72 L.Ed.2d 652). The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982), 70 Ohio St.2d 79, 80,434 N.E.2d 1356, 1357; State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court has finished its examination, the court may reverse the judgment of conviction if it appears that the fact finder, in resolving conflicts in evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins,78 Ohio St.3d at 387, 678 N.E.2d at 547 (quoting State v. Martin (1983), 20 Ohio St.3d 172
[20 Ohio App.3d 172], 175, 485 N.E.2d 717, 720-21). If the state presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, a reviewing court will not reverse the judgment of conviction as against the manifest weight of the evidence. State v. Eley (1978), 56 Ohio St.2d 169,383 N.E.2d 132, syllabus.
Upon our review of the entire record, we find that the trier of fact did not clearly lose its way and create a manifest miscarriage of justice. We find substantial, competent, credible evidence upon which to sustain appellant's conviction for negligent assault.
R.C. 2903.14 (A) sets forth the elements of the offense of negligent assault. The statute provides: "No person shall negligently, by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code, cause physical harm to another * * *."
We note that appellant does not dispute whether the state established, beyond a reasonable doubt, that appellant committed the offense of negligent assault. Rather, appellant argues that the fact finder committed a manifest miscarriage of justice by failing to conclude that appellant established, by a preponderance of the evidence, that he acted in self-defense.
To establish self-defense, a defendant bears the burden of proving, by a preponderance of the evidence that:
 "(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) the defendant did not violate any duty to retreat or avoid the danger."
State v. Thomas (1997), 77 Ohio St.3d 323, 326, 673 N.E.2d 1339,1342. Furthermore, the amount of force used in self-defense must be reasonable. As the court stated in State v. Fox (1987),36 Ohio App.3d 78, 79, 520 N.E.2d 1390, 1391: "[O]ne may use such force as the circumstances require in order to defend against danger which one has good reason to apprehend." We note that whether the defendant used unreasonable force in repelling a perceived danger is a question of fact for the trier of fact.State v. Bruckner (Sept. 30, 1993), Cuyahoga App. No. 63296, unreported; State v. Howard (May 26, 1992), Montgomery App. No. 12533, unreported.
Assuming, arguendo, that appellant established the first and third elements outlined above, we find slight evidence in the record which tends to suggest that appellant subjectively believed that he was in imminent danger of death or great bodily harm and that the only means to escape the harm was by using a gun. The evidence is undisputed that the victim did not have a weapon on his person during the fight. The evidence demonstrates that only appellant and the victim were involved in the fight. While we do not doubt that appellant may well have feared he would suffer some injury, under the circumstances of the case subjudice, we do not believe that appellant established that he was in imminent danger of death or great bodily harm. Furthermore, we believe that appellant used more force than reasonably necessary to defend himself.
Moreover, we note that appellant's claim of self-defense rests primarily upon his testimony. Scaggs denied beating on appellant's door and telling appellant that Scaggs was going to "tear his head off." It is well established that: "[T]he weight to be given the evidence and credibility of the witnesses are primarily for the trier of fact." State v. Thomas (1982),70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356,1357. The trier of fact is free to believe all, part, or none of the testimony of each witness who appears before it. State v.Caldwell (1992), 79 Ohio App.3d 667,607 N.E.2d 1096. In State v. Awan (1986),22 Ohio St.3d 120, 123, 489 N.E.2d 277,280, the court emphasized that appellate courts must defer conflicts in the evidence to the trier of fact who had the opportunity to hear witnesses and observe their demeanor: "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its judgment for that of the trier of fact."
Obviously, in the case at bar the fact finder opted not to believe appellant's claim when he acted in self-defense and chose to believe the state's version of events. The state presented credible, competent and substantial evidence that, if believed, established that appellant committed the offense of negligent assault. We cannot say that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.
Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II
In his second assignment of error, appellant asserts that the trial court imposed a sentence contrary to law by ordering him to pay restitution to the victim. Appellant argues that neither R.C.2929.21 (E) nor R.C. 2951.02 (C) permit a trial court to order a defendant, who has been convicted of a misdemeanor not involving an intentional act, to pay restitution for medical expenses or lost income. We find merit to appellant's argument.
R.C. 2929.21 (E) allows a trial court to order a defendant who has been convicted of a misdemeanor to pay restitution to the victim. The statute provides:
 The court may require a person who is convicted of or pleads guilty to a misdemeanor to make restitution for all or part of the property damage that is caused by the offense and for all or part of the value of the property that is the subject of any theft offense * * * that the person committed. * * *
We note that:
 "[T]he right to order restitution is limited to the actual loss or damage caused by the offense for which the defendant is convicted, and the amount claimed must be established to a reasonable degree of certainty before restitution can be ordered. State v. Campbell (1993), 85 Ohio App.3d 510, 512, 620 N.E.2d 150."
State v. Harrison (Sept. 4, 1997), Cuyahoga App. No. 70764, unreported. Moreover, a trial court may not order a misdemeanor offender to pay restitution for non-property related damage, such as medical bills or funeral expenses. See State v. Theuring
(1988), 46 Ohio App.3d 152, 157, 546 N.E.2d 436, 440;Harrison; State v. Morrison (Dec. 19, 1991), Gallia App. No. 90 CA 26, unreported. Additionally, courts have held that the failure to hold a hearing regarding the amount of damages and the defendant's ability to pay amounts to plain error. Harrison,supra (citing State v. Wohlgemuth (1990),66 Ohio App.3d 195, 200, 583 N.E.2d 1076).
In the case at bar, the trial court's judgment entry ordering appellant to pay restitution to the victim lacks specificity as to the amount of restitution and the reason for the restitution. The trial court did not specify whether it ordered appellant to pay restitution for property damage that the victim suffered.
We disagree with the state's argument that the trial court ordered appellant to pay restitution as a condition of appellant's probation. From our review of the trial court's judgment entry on sentence, we are unable to conclude that the trial court ordered the restitution as part of appellant's probation. Nowhere in the entry does the trial court grant appellant probation conditioned upon appellant paying restitution. Moreover, we note that in Morrison, supra, we rejected a similar argument.
Accordingly, we sustain appellant's second assignment of error and remand the matter to the trial court for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART REMANDED FORFURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Appellee and appellant shall equally divide the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Kline, P.J.: Concur in Judgment Opinion
For the Court
 BY: ______________________ Peter B. Abele, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.